David J. Tsai (SBN 244479)
  david.tsai@pillsburylaw.com
John Steger (SBN 341299)
  john.steger@pillsburylaw.com
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
Four Embarcadero Center, 22nd Floor
San Francisco, CA  94111
Telephone: (415) 983-1000
Facsimile:  (415) 983-1200

Carolyn S. Toto (SBN 233825)
  carolyn.toto@pillsburylaw.com
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
725 South Figueroa Street, 36th Floor
Los Angeles, CA  90017
Telephone: (213) 488-7100

*Attorneys for Defendant*
*Houzz Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AR DESIGN INNOVATIONS LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>HOUZZ INC.,<br><br>                    Defendant. | Case No.: 2:25-cv-07963-SVW-AJR<br><br>**DEFENDANT HOUZZ INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(C); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:        January 5, 2026<br>Time:       1:30 p.m.<br>Ctrm:       10A<br><br>The Honorable Stephen V. Wilson |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

1.  THE ASSERTED PATENT ................................................................. 2

2.  LEGAL STANDARDS ..................................................................... 5

    2.1  Patent Eligibility Under 35 U.S.C. § 101 Is Properly Decided
        On A Rule 12(c) Motion For Judgment On The Pleadings ..................... 5

    2.2  Patent Eligible Subject Matter Under 35 U.S.C. § 101 ........................ 6

3.  ARGUMENT ................................................................................. 8

    3.1  The '572 Patent Is Directed to an Abstract Idea ............................. 8

        3.1.1  The '572 Patent is directed to the abstract idea of arranging,
               manipulating, and rendering three-dimensional objects within
               a scene to visualize spatial relationships. ........................... 9

        3.1.2  The '572 Patent recites only functional limitations ..................... 13

        3.1.3  The '572 Patent does not improve computer technology. ............. 14

    3.2  The '572 Patent Does Not Contain An Inventive Concept ..................... 17

4.  CONCLUSION .............................................................................. 21

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Aatrix Software v. Green Shades Software, Inc.*,
890 F.3d 1354 (Fed. Cir. 2018) ............................................................5, 8

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
728 F.3d 1336 (Fed. Cir. 2013) ...............................................................14

*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,
838 F.3d 1266 (Fed. Cir. 2016) ...............................................................13

*Affinity Labs of Tex., LLC v. DirecTV LLC*,
838 F.3d 1253 (Fed. Cir. 2016) .................................................................7

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
97 F.4th 1371 (Fed. Cir. 2024) ..........................................................12, 18

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014)......................................................................*passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
841 F.3d 1288 (Fed. Cir. 2016) ...............................................................20

*AR Design Innovations LLC v. Ashley Furniture Indus., Inc.*,
No. 4:20-CV-392-SDJ, 2021 WL 1213551 (E.D. Tex. Mar. 30, 2021)..........*passim*

*AR Design Innovations LLC v. City Furniture, Inc.*,
No. 23-cv-20127, 2023 WL 3844917 (S.D. Fla. June 6, 2023) ......................*passim*

*Ask Sydney, LLC v. Snap, Inc.*,
698 F. Supp. 3d 1194 (C.D. Cal. 2023)........................................5, 11, 12

*Automated Tracking Sols., LLC v. The Coca-Cola Co.*,
723 Fed. App'x 989 (Fed. Cir. 2018) ........................................................5

*Barbaro Techs., LLC v. Niantic, Inc.*,
475 F. Supp. 3d 1007 (N.D. Cal. 2020)....................................................12

*BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016) ...............................................................18

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018) ...................................................................2, 7, 17

*Bilski v. Kappos*,
    561 U.S. 593 (2010)...................................................................................19

*BSG Tech LLC v. Buyseasons, Inc.*,
    899 F.3d 1281 (Fed. Cir 2018) ...................................................................20

*Chavez v. United States*,
    683 F.3d 1102 (9th Cir. 2012) .....................................................................5

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) ...................................................................3

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
    880 F.3d 1356 (Fed. Cir. 2018) .................................................................15

*Customedia Techs., LLC v. DISH Network Corp.*,
    951 F.3d 1359 (Fed. Cir. 2020) .......................................................16, 17, 19

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ............................................................14, 19

*Electric Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ..............................................................9, 21

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ..............................................................6, 15

*Fleming v. Pickard*,
    581 F.3d 922 (9th Cir. 2009) .......................................................................5

*FullView, Inc. v. Polycom, Inc.*,
    485 F. Supp. 3d 1156 (N.D. Cal. 2020)...................................................12, 18

*Gottschalk v. Benson*,
    409 U.S. 63 (1972)...................................................................................19

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016) ...............................................................14, 16

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
    50 F.4th 1371 (Fed. Cir. 2022) ..................................................................12

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
   711 Fed. App'x 1012 (Fed. Cir. 2017) ................................................................. 6, 7

*Intellectual Ventures I LLC v. Symantec Corp.*,
   725 Fed. App'x 976 (Fed. Cir. 2018) ........................................................................ 5

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015) ................................................................................ 13

*Interval Licensing LLC v. AOL, Inc.*,
   896 F.3d 1335 (Fed. Cir. 2018) ............................................................................ 8, 13

*Living Designs, Inc. v. E.I. Dupont De Nemours and Co.*,
   431 F.3d 353 (9th Cir. 2005) ...................................................................................... 6

*Maxon, LLC v. Funai Corp., Inc.*,
   726 Fed. App'x 797 (Fed. Cir. 2018) ......................................................................... 5

*McRO, Inc. v. Bandai Namco Games Am., Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016) ........................................................................... 7, 15

*Move, Inc. v. Real Estate All. Ltd.*,
   221 F. Supp. 3d 1149 (C.D. Cal. 2016), *aff'd*, 721 F. App'x 950
   (Fed. Cir. 2018) ................................................................................................... 9, 18

*OpenTV, Inc. v. Apple Inc.*,
   No. 15-cv-2008, 2016 WL 344845 (N.D. Cal. Jan. 28, 2016) .................................. 6

*RecogniCorp LLC v. Nintendo Co.*,
   855 F.3d 1322 (Fed. Cir. 2017) ................................................................................ 14

*Reese v. Sprint Nextel Corp.*,
   No. 13-cv-03811-ODW (PLAx), 2018 WL 1737613, at *5 (C.D. Cal.
   Apr. 9, 2018) .............................................................................................................. 8

*SAP Am., Inc. v. InvestPic LLC*,
   890 F.3d 1016 (Fed. Cir. 2018) ........................................................................... 5, 8

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017) ................................................................................. 18

*Simio, LLC v. FlexSim Software Prods., Inc.*,
   983 F.3d 1353 (Fed. Cir. 2020) ......................................................................... 12, 17

*Smartflash LLC v. Apple Inc.*,
    680 Fed. App'x 977 (Fed. Cir. 2017) ....................................................6, 7

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    78 F. Supp. 3d 958 (N.D. Cal. 2015), *aff'd*, 839 F.3d 1138
    (Fed. Cir. 2016)........................................................................14

*Talent Broker Tech., LLC v. Musical.ly, Inc.*,
    No. 17-08532-SJO (MRWx), 2018 WL 3019641 (C.D. Cal., May 22,
    2018) .....................................................................................7, 8

*Trading Techs. Int'l, Inc. v. CQG, Inc.*,
    675 F. App'x 1001 (Fed. Cir. 2017).........................................15

*Trinity Info Media, LLC v. Covalent, Inc.*,
    562 F. Supp. 3d 770 (C.D. Cal. 2021) ...............................16, 17

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ..............................17, 19, 20

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) .....................................................18

*Voter Verified, Inc. v. Election Sys. & Software LLC*,
    887 F.3d 1376 (Fed. Cir. 2018) ...................................................5

*Williamson v. Citrix Online, LLC*,
    212 F. Supp. 3d 887 (C.D. Cal. 2016)..............................10, 11, 18

**Codes**

35 U.S.C. § 101..............................................................................*passim*

**Rules**

Fed. R. Civ. P. 12(c) ..........................................................................5

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Houzz Inc. ("Houzz") respectfully moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), seeking a determination that all claims of U.S. Patent No. 7,277,572 ("'572 Patent") are ineligible under 35 U.S.C. § 101.

The '572 Patent claims nothing more than the abstract idea of arranging, manipulating, and rendering three-dimensional objects within a scene—an activity that interior designers, architects, and consumers have performed for **centuries**.  The patent merely performs a longstanding human practice using generic computer components, including a standard client-server architecture and a conventional graphical user interface ("GUI").  It does not claim any improvement to computer technology itself.  Rather, it simply recites the desired result—creating a three-dimensional ("3D") design scene—implemented through well-known, pre-existing software and off-the-shelf rendering engines.

Because this motion permits consideration of the intrinsic record, the Court's analysis should be guided by the patent itself rather than by Plaintiff AR Design Innovations LLC's ("AR Design") characterizations of it.  This is significant because the prior decisions addressing the same patent accepted AR Design's allegations as true and relied on its assertions that the '572 Patent's claims were directed towards benefits such as "speed" and "usability"**—which they are not**.  *See AR Design Innovations LLC v. Ashley Furniture Indus., Inc.*, No. 4:20-CV-392-SDJ, 2021 WL 1213551, at *7 (E.D. Tex. Mar. 30, 2021); *AR Design Innovations LLC v. City Furniture, Inc.*, No. 23-cv-20127, 2023 WL 3844917, at *7–*8 (S.D. Fla. June 6, 2023).

The intrinsic record makes clear that the '572 Patent does not disclose any technological innovation or inventive concept but instead implements a longstanding design practice using conventional computer components.  Moreover, upon reviewing the actual claims of the asserted '572 Patent, both past and subsequent decisions addressing GUIs and visualization tools confirm that such claims lack a concrete

improvement in computer functionality are ineligible under § 101. Accordingly, patent eligibility may be resolved as a question of law, and judgment on the pleadings is warranted.

## 1.    THE ASSERTED PATENT

The '572 Patent,[1] titled "Three-Dimensional Interior Design System," purports to describe a computerized method for "generating and rendering a photorealistic three-dimensional (3D) perspective view of a 3D object selectively positioned within a 3D scene." Dkt. 1, Ex. A at Abstract. It claims to allow a user—through a conventional client–server architecture—to select, import, and manipulate digital representations of furniture or other objects in a virtual room. *See id*. In reality, the patent merely automates the age-old practice of arranging and visualizing objects in space, using generic computer components and commercially available 3D graphics software.

Although only Claim 1 of the '572 Patent has been asserted to date (*see, e.g.*, Dkt. 1 at ¶ 45; *see id.*, Ex. B, "Asserted Claim 1"),[2] it is representative because it captures the patent's alleged inventive concept and the same purported "technological improvements" described throughout the specification.[3] *See* Dkt. 1, Ex. A at Cl. 1. The other claims add only minor, conventional variations—such as displaying multiple views, rotating or scaling 3D objects, or locally storing data—which do not change the

---

[1] The '572 Patent issued on October 2, 2007, and was based on Application No. 10/683,825 filed on October 10, 2003. The named inventors, Cathryn MacInnes and Gerald Pearlstein, were immigration attorneys at the time of the application's filing and through to the present day. They have little apparent experience or expertise in computer engineering or the development of 3D CAD visualization systems.

[2] Houzz's Motion focuses on Asserted Claim 1 (the only asserted claim). To the extent AR Design asserts additional claims, it bears the burden of establishing that any such claims are not representative. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Houzz reserves the right to challenge any additional claims that are not representative as likewise invalid under § 101.

[3] Claim 1 of the '572 Patent has already been determined to be representative of all other claims. *See Ashley Furniture*, 2021 WL 1213551, at *1 ("Claim 1 of the '572 Patent, which the Court concludes is representative of the other claims, and which is the only asserted independent claim."); *see also City Furniture*, 2023 WL 3844917, at *6.

4900-7866-5592

§ 101 analysis. *See id.* at Cls. 2–30. All the claims share the same underlying concept: using a conventional client–server architecture and a standard graphical interface to visualize and manipulate three-dimensional objects within a scene. *See id.* As the Federal Circuit explained, when claims are "substantially similar and linked to the same abstract idea," a single claim may be treated as representative. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

Asserted Claim 1 recites:

> 1.    A method in a client-server computing environment for generating and rendering a photorealistic three-dimensional (3D) perspective view of a 3D object selectively positioned within a 3D scene, the method comprising:
>> (a) communicably accessing a server with a client;
>> (b) operating with the client, a client application configured for scene editing and rendering, including a graphical user interface (GUI);
>> (c) displaying a 3D scene with the GUI;
>> (d) configuring the 3D scene for being selectively displayed in a plurality of views;
>> (e) retrieving at least one 3D object from the server;
>> (f) importing the 3D object into the 3D scene to generate a composite;
>> (g) manipulating the 3D object within the composite for placement and orientation;
>> (h) rendering a 3D image of the composite at the client;
>> (i) selectively reconfiguring the 3D image in real time;
>> (j) applying luminosity characteristics to the 3D image; and
>> (k) rendering, with the client application, a photorealistic 3D view of the composite image, including the luminosity characteristics.

Dkt. 1, Ex. A at Cl. 1.

On its face, Asserted Claim 1 is purely functional. It recites the desired result—producing a "photorealistic 3D view"—without specifying ***how*** that result is achieved. *See id.* The claim includes no algorithm, data structure, or processing technique for performing 3D rendering or for applying "luminosity characteristics." *See id.* Each

1  step invokes routine computer activity that was well understood at the time of filing:
2  accessing a server, downloading data, "rendering" a 3D image, manipulating it through
3  a GUI, and displaying a result on a screen. *See id.* The patent only claims a result, not
4  a technological means for achieving it.

5      AR may contend that the '572 Patent represents an improvement through features
6  such as "luminosity" effects or client-side rendering, but those purported innovations
7  are described only as desired results, not as concrete technical solutions. The patent
8  discloses no algorithm, data structure, or rendering technique for achieving
9  photorealism or distributed processing; instead, it purely relies on existing commercial
10  rendering engines to perform those functions. In fact, the specification confirms that
11  every component operates conventionally—it expressly references preexisting, off-the-
12  shelf technologies such as Microsoft's Foundation Classes and ActiveX™ for the GUI,
13  3D ACIS Modeler™ for geometric modeling, LightWorks™ and HOOPS 3D™ for
14  rendering—all well-known commercial products widely used in computer-aided design
15  (CAD) systems long before the patent application was filed. *See id.* at 10:30–11:40.
16  Nothing in the '572 Patent modifies or improves those tools.

17      The patent also concedes that its "client-server" configuration employs ordinary
18  Internet communications. *Id.* at 7:43–60, 8:46–64. The "client application" retrieves
19  3D objects from the server through standard HTML or XML requests and transmits
20  files using conventional FTP utilities. *Id.* at 7:60–63, 9:59–62. The alleged
21  "innovation" therefore amounts to simply performing a familiar design task—placing
22  digital furniture into a digital room—using exactly the same rendering engines and
23  network protocols that were already standard in the art. Indeed, existing CAD and 3D
24  modeling systems perform the same steps and achieve the same result. The '572 Patent
25  claims ***no improvement*** in how those systems function, only the generic use of such
26  systems to carry out a designer's mental process on a computer screen.

27

28

Accordingly, Asserted Claim 1 is representative of the abstract idea at the heart of the patent: arranging, manipulating, and rendering three-dimensional objects within a scene.

## 2. LEGAL STANDARDS

### 2.1 Patent Eligibility Under 35 U.S.C. § 101 Is Properly Decided On A Rule 12(c) Motion For Judgment On The Pleadings

"Under Federal Rule of Civil Procedure 12(c), '[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.'" *Ask Sydney, LLC v. Snap, Inc.*, 698 F. Supp. 3d 1194, 1197 (C.D. Cal. 2023) (citing Fed. R. Civ. P. 12(c)). "A Rule 12(c) motion challenges the legal sufficiency of the pleadings, and judgment under this rule is proper when, taking all of the pleaded material facts as true, the moving party is entitled to judgment as a matter of law." *Id.* (citing *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009)). "The standard for judgment under Rule 12(c) is essentially the same as under Rule 12(b)(6)." *Id.* (citing *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)).

Patent eligibility under 35 U.S.C. § 101 is properly and frequently decided on motions for judgment on the pleadings. *See Aatrix Software v. Green Shades Software, Inc.*, 890 F.3d 1354, 1358–59 (Fed. Cir. 2018) (denying rehearing and noting "[n]othing in this decision should be viewed as casting doubt on the propriety of our previous cases resolving patent eligibility to motions to dismiss or summary judgment") (citing as examples *SAP Am., Inc. v. InvestPic LLC*, 890 F.3d 1016, 1023–24 (Fed. Cir. 2018) (holding claims ineligible at Rule 12(c) stage); *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1385–86 (Fed. Cir. 2018) (same at Rule 12(b)(6) stage); *Maxon, LLC v. Funai Corp., Inc.*, 726 Fed. App'x 797, 799–800 (Fed. Cir. 2018) (same); *Intellectual Ventures I LLC v. Symantec Corp.*, 725 Fed. App'x 976, 978 (Fed. Cir. 2018) (same at summary judgment); *Automated Tracking Sols., LLC v. The Coca-Cola Co.*, 723 Fed. App'x 989, 994–96 (Fed. Cir. 2018) (same at Rule 12(c) stage);

*Ask Sydney*, 698 F. Supp. 3d at 1202 (granting Rule 12(c) motion based on patent ineligibility under § 101).

"Eligibility under 35 U.S.C. § 101 is a question of law, based on underlying facts." *SAP Am.*, 890 F.3d at 1020. "Like other legal questions based on underlying facts, this question may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *Id.*

Even if the Court were to consider matters outside the pleadings, Rule 12(c) permits conversion of the motion to one for summary judgment. *See Living Designs, Inc. v. E.I. Dupont De Nemours and Co.*, 431 F.3d 353, 363 and n.9 (9th Cir. 2005).

## 2.2    Patent Eligible Subject Matter Under 35 U.S.C. § 101

The Supreme Court has articulated a two-step inquiry to determine whether claims are directed to patent-ineligible concepts pursuant to 35 U.S.C. § 101. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014).

The first step in *Alice* is to "determine whether the claims at issue are directed to one of those patent-ineligible applications of those concepts." *Id.* (citation omitted). "The Supreme Court and [the Federal Circuit] have held that a wide variety of well-known and other activities constitute abstract ideas." *Intellectual Ventures I LLC v. Erie Indem. Co.*, 711 Fed. App'x 1012, 1015 (Fed. Cir. 2017) (citation omitted). Numerous cases have held that claims purporting to cover the manipulation of data on computers (including controlling access to that data) are directed to abstract ideas. *See, e.g.*, *OpenTV, Inc. v. Apple Inc.*, No. 15-cv-2008, 2016 WL 344845, at *5 (N.D. Cal. Jan. 28, 2016) (controlling the right to access information is "a long-standing and well-understood business practice that predates the internet."); *Smartflash LLC v. Apple Inc.*, 680 Fed. App'x 977, 982–83 (Fed. Cir. 2017) ("conditioning and controlling access to data based on payment" abstract). The Federal Circuit has found claims directed to improvements to computer functionality are patent eligible, but only if "the focus of the claims is on the specific asserted improvement in computer capabilities" and not "a

process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Smartflash*, 680 Fed. App'x at 982 (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016)).  For example, in *Enfish*, the claims were directed to an "improvement of an existing technology" because the claimed invention "achieves other benefits over conventional databases, such as increased flexibility, faster search times, and smaller memory requirements." *Id.* at 1337.  Similarly, in *McRO, Inc. v. Bandai Namco Games Am., Inc.*, the "claimed process use[d] a combined order of specific rules that render[ed] information into a specific format that is then used and applied to create desired results: a sequence of synchronized, animated characters," which was "a patentable, technological improvement over the existing, manual 3-D animation techniques." 837 F.3d 1299, 1315–16 (Fed. Cir. 2016).

If the claims are directed to an abstract concept, the claims may nonetheless be eligible for a patent only if they contain an inventive concept. *See, e.g., Affinity Labs of Tex., LLC v. DirecTV LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016).  The court at this second step of the *Alice* test "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (citation omitted).  "At step two, more is required than well-understood, routine, conventional activity already engaged in by the [relevant] community, which fails to transform the claim into significantly more than a patent upon the ineligible concept itself." *Smartflash*, 680 Fed. App'x at 981 (citations and internal quotation marks omitted).  Only reciting generic computer components, and requiring that the abstract concept be performed on a computer, does not constitute an inventive concept. *Intellectual Ventures I*, 711 Fed. App'x, at 1018–19.  "While *Alice/Mayo* Step 2 may sometimes present a factual issue, 'not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry' and the Court looks to the pleadings and the intrinsic record to determine if they evince 'the purportedly inventive concepts.'" *Talent Broker Tech., LLC v. Musical.ly, Inc.*, No. 17-08532-SJO

1   (MRWx), 2018 WL 3019641, at *7 (C.D. Cal., May 22, 2018) (quoting *Berkheimer*,

2   881 F.3d at 1368).  "[T]here must be evidence supporting a finding that the additional

3   elements were well understood, routine, and conventional," and "[r]elying on the

4   specification alone may be appropriate where, as in *Mayo*, the specification *admits* as

5   much." *Aatrix Software*, 890 F.3d at 1356 (emphasis in original).  "In a situation where

6   the specification admits the additional claim elements are well-understood, routine, and

7   conventional, it will be difficult, if not impossible, for a patentee to show a genuine

8   dispute." *Id.*  Indeed, after *Aatrix*, courts have routinely found claims invalid under

9   Section 101 in view of admissions in the specification as to what was already known.

10  *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1345 (Fed. Cir. 2018) (citing

11  admissions in the specification that the claimed "instructions" are "generic and cover

12  established ways to access information, organize information, and then display

13  information."); *SAP Am.*, 890 F.3d at 1023 ("Rather, to the extent that parallel

14  processing is discussed in the specification, it is characterized as generic parallel

15  processing components—not even asserted to be an invention of InvestPic—on which

16  the claimed method could run."); *Talent Broker Tech.,* 2018 WL 3019641, at *8 (citing

17  to specification as describing existing, conventional, and typically present hardware

18  components and networks); *Reese v. Sprint Nextel Corp.*, No. 13-cv-03811-ODW

19  (PLAx), 2018 WL 1737613, at *5 (C.D. Cal. Apr. 9, 2018) (finding that "claims involve

20  functionality of known telecommunications equipment").

21  **3.    ARGUMENT**

22      **3.1    The '572 Patent Is Directed to an Abstract Idea**

23      In determining whether claims are directed to an abstract idea, the Court should

24  look at the focus of the claims.  Here, the '572 Patent focuses on an abstract idea, and

25  therefore fails Alice Step 1.

26

27

28

### 3.1.1   The '572 Patent is directed to the abstract idea of arranging, manipulating, and rendering three-dimensional objects within a scene to visualize spatial relationships.

The '572 Patent is directed to an intellectual process that humans have long performed manually.  *See generally* Dkt. 1, Ex. A.  Before computers, architects and designers relied on drawings, models, and dioramas to visualize spatial arrangements.  Translating that same practice into computer software does not make it patentable.  *See Move, Inc. v. Real Estate All. Ltd.*, 221 F. Supp. 3d 1149, 1158 (C.D. Cal. 2016), *aff'd*, 721 F. App'x 950, 954–57 (Fed. Cir. 2018) (holding that "manipulating a digital map to display and select objects" is an abstract idea); *Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (holding claims directed to collecting, analyzing, and displaying information to be abstract).  Just as displaying property locations on a digital map in *Move* was considered an abstract extension of a longstanding human activity, visualizing furniture within a room using a generic 3D interface is no more than the computerization of a conventional mental process.  721 F. App'x at 954–57.

In fact, Asserted Claim 1 mirrors similar claims that this Court and the Federal Circuit have consistently deemed directed to abstract ideas.  For example, in *Move*, representative Claim 1 recited:

> "A method using a computer for locating available real estate properties comprising the steps of:
> >creating a database of the available real estate properties;
> >displaying a map of a desired geographic area;
>
> >selecting a first area having boundaries within the geographic area;
> >zooming in on the first area of the displayed map to about the boundaries of the first area to display a higher level of detail than the displayed map;
> >displaying the zoomed first area;
> >selecting a second area having boundaries within the zoomed first area;

> displaying the second area and a plurality of points within the second area, each point representing the appropriate geographic location of an available real estate property; and
>
> identifying available real estate properties within the database which are located within the second area."

*Id.* at 1154.  There, this Court held the claim to be directed to the abstract idea of "collecting and organizing data about available real estate properties and displaying data on a zoom-enabled digital map," and the Federal Circuit affirmed, finding the patent recited "only generic computer components" and failed to explain "what was inventive about the zoom feature or how that feature was accomplished."  *Id.* at 1158, *aff'd*, 721 F. App'x at 954–57.  The *Move* patent's focus on displaying geographic data through a user-manipulated interface is directly analogous to the '572 Patent's focus on displaying spatial data (3D objects within a scene) using standard GUI and rendering functions.  Both claim the use of computers to move a familiar visual task from the drafting table to the computer screen—without reflecting any technological advance.

Similarly, in *Williamson v. Citrix Online, LLC*, this Court invalidated a patent claiming a distributed-learning "virtual classroom."  212 F. Supp. 3d 887 (C.D. Cal. 2016).  There, representative Claim 1 recited:

> "1. A method of conducting distributed learning among a plurality of computer systems coupled to a network, the method comprising the steps of:
>
> – providing instructions to a first computer system coupled to the network for:
>
>     – creating a graphical display representative of a classroom;
>
>     – creating a graphical display illustrating controls for selecting first and second data streams;
>
>     – creating a first window for displaying the first selected data stream; and
>
>     – creating a second window for displaying the second selected data stream, wherein the first and second windows are displayed simultaneously; and
>
> – providing instructions to a second computer system coupled to the network for:

4900-7866-5592

– creating a graphical display representative of the classroom;
– creating a third window for displaying the first selected data stream; and
– creating a fourth window for displaying the second selected data stream, wherein
– the third and fourth windows are displayed simultaneously."

*Id.* at 890. Specifically, this Court held that the claim was directed to "the abstract idea of creating a virtual, interactive learning environment," finding that the "graphical display" limitation merely embodied that idea and applied it using "industry-standard computer hardware and software" performing only "general computer functions" without any inventive concept or technological improvement. *Id.* at 896, 902. The '572 Patent's use of a generic GUI to render a "photorealistic" 3D scene is no different; it simply employs standard graphics software to present information visually—***not a specific advancement in computing***.

Likewise, in *Ask Sydney*, this Court more recently invalidated patents claiming a computer-implemented method for generating and presenting image-based recommendations to users based on input preferences. 698 F. Supp. at 1199. There, representative Claim 1 was paraphrased as follows:

"[A] computer-implemented method that includes the following steps:
(1) receiving an indication that a user initiates an application to direct the user to a current interest associated with a category of physical objects;
(2) determining a plurality of tags specific to the user;
(3) transmitting an electronic image to the user where the image represents a physical object associated with a category of tags specific to the user;
(4) presenting the image on the electronic device;
(5) receiving user input regarding a preference for the image;
(6) processing the plurality of tags based on the expressed preference to determine the next set of tags specific to the user;
(7) if the response was negative, remove that image from the session;
(8) if the response was positive, determine at least one additional tag based on tag weights relating to user preference;

(9) determining the next electronic image to present; and

(10) generating a sequence of images according to this method."

*Id.* (internal quotations omitted).  In particular, this Court held that the claims were directed to the abstract idea of making current-interest recommendations to a computer user, likening the process to how a "shoe salesperson" gauges a customer's reactions and updates recommendations accordingly.  *Id.* at 1199–1200.  Although the patents described the use of "tags" and "weights," those elements merely automated a human practice through conventional computer components, offering no improvement to computer functionality or solution to any technological problem.  *Id.* at 1201–02. Similarly, Asserted Claim 1 does nothing more than automate a familiar human process—taking input and changing a display—through generic software and standard computer functions, no less abstract than the method found ineligible in *Ask Sydney*.

Additionally, courts have repeatedly rejected similar visualization and image-processing patents as abstract when they simply manipulate or display visual information using conventional computer components.  *See AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1379–80 (Fed. Cir. 2024) (holding medical imaging visualization patents ineligible as "abstract data manipulation" where "no unconventional technology or concrete application" was claimed); *FullView, Inc. v. Polycom, Inc.*, 485 F. Supp. 3d 1156, 1164–65 (N.D. Cal. 2020) (finding composite-image patents directed to "merging images" abstract where "arrangement of cameras, sensors, and mirrors was simple geometry" and lacked inventive concept); *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1379–80 (Fed. Cir. 2022) (invalidating mapping patents directed to the "abstract idea of organizing and displaying visual information" where claims lacked "an improvement in any computing technology"); *Barbaro Techs., LLC v. Niantic, Inc.*, 475 F. Supp. 3d 1007, 1015–16 (N.D. Cal. 2020) (holding that integrating real-world location data into 3D environments was abstract because "the concept of building models of real-world locations predated computers" and involved only generic computer components);

1   *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1364 (Fed. Cir. 2020)

2   (invalidating computer simulation patents for "using graphics instead of programming

3   to create object-oriented simulations[.]").  The parallels are evident.  Asserted Claim 1

4   recites conventional visualization functions—retrieving, manipulating, lighting, and

5   rendering 3D images—performed by standard graphics software within a routine client–

6   server architecture, using generic computing components without improving how

7   computers render or display visual data.

8              3.1.2   The '572 Patent recites only functional limitations.

9         Moreover, Asserted Claim 1 recites a series of routine steps, described merely by

10  their intended results: accessing a server, retrieving a 3D object, importing the object

11  into a scene, manipulating it for placement, and rendering a "photorealistic" image with

12  "luminosity characteristics."  Dkt. 1, Ex. A at Cl. 1.  None of these steps specify ***how***

13  rendering or lighting is achieved, nor do they improve the functioning of the computer

14  itself.  They are purely result-oriented instructions that invoke generic computing

15  capabilities to perform an aesthetic task.

16        Claims that purely state a desired result without reciting the mechanism for

17  achieving it are ineligible under § 101.  *Internet Patents Corp. v. Active Network, Inc.*,

18  790 F.3d 1343, 1348 (Fed. Cir. 2015) (holding claims directed to maintaining the state

19  of a web browser abstract because they described the result without explaining the

20  "method by which maintaining the state is accomplished.").  Likewise, the '572 Patent

21  claims only the desired result of rendering a scene without disclosing any specific

22  technological means or implementation for doing so.

23        This functional nature of Asserted Claim 1 confirms its abstract character.  It

24  describes what the computer ***should*** accomplish—*e.g.*, render a photorealistic scene—

25  but never explains ***how*** to accomplish it in a non-conventional way.  Claims reciting

26  aspirational results without technical implementation are directed to abstract ideas.  *See*

27  *Interval Licensing*, 896 F.3d at 1345 (holding that "result-oriented" claims lacking

28  description of a concrete solution are abstract); *Affinity Labs of Tex., LLC v.*

1    *Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016) (same, finding claims abstract

2    where "the purely functional nature of the claim confirms that it is directed to an abstract

3    idea").    Here, Asserted Claim 1 sets forth a goal—generating and rendering a

4    photorealistic 3D view—but does not provide any specific algorithm, rule set, or data

5    structure that could distinguish it from the routine functions of off-the-shelf 3D

6    modeling tools.

7                    3.1.3   The '572 Patent does not improve computer technology.

8            Nor does Asserted Claim 1 improve the operation of any computer hardware,

9    rendering software, or network protocols.    Instead, it simply applies generic image

10   manipulation steps—retrieving objects, arranging them, applying lighting, and

11   displaying the result.    Limiting an abstract idea to a particular technological context

12   does not make it patentable.  *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245,

13   1266 (Fed. Cir. 2014) (explaining that "limiting the use of an abstract idea to a particular

14   technological environment" is insufficient); *In re TLI Commc'ns LLC Patent Litig.*, 823

15   F.3d 607, 612–13 (Fed. Cir. 2016) (same).    The '572 Patent's invocation of a client–

16   server architecture and GUI merely situates the abstract idea in a conventional

17   computing environment without supplying any inventive concept.

18           In *TLI*, the Federal Circuit found claims directed to processing images

19   impermissibly abstract because they did not disclose "a specific improvement to

20   computer functionality," but instead recited "use of conventional or generic technology

21   in a nascent but well-known environment."  *In re TLI Commc'ns LLC Pat. Litig.*, 823

22   F.3d at 611–12.    The same is true here.

23           To the extent AR Design contends that Asserted Claim 1 represents an

24   "improvement" over prior visualization systems, the alleged improvement is not found

25   in the claim language itself.    Courts consistently reject attempts to rely on generic or

26   aspirational statements in the specification to establish patent eligibility when the claims

27   lack the corresponding technical detail.  *See Accenture Global Servs., GmbH v.*

28   *Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) ("The important inquiry

for a § 101 analysis is to look to the claim."); *RecogniCorp LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("The 'inventive concept' must be evident in the claims."). Nothing in Asserted Claim 1 discloses a new or unconventional method of rendering, lighting, or image composition that departs from existing, off-the-shelf practices. Each step relies on routine, well-understood techniques to achieve an expected result. "The complexity of the implementing software or the level of detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method." *Synopsys, Inc. v. Mentor Graphics Corp.*, 78 F. Supp. 3d 958, 965 (N.D. Cal. 2015), *aff'd*, 839 F.3d 1138 (Fed. Cir. 2016). The same principle applies here: describing complex visualization software in the specification cannot substitute for an inventive concept absent from the claims themselves.

Lastly, neither of the prior district court decisions addressing the '572 Patent—the Eastern District of Texas's ruling in *Ashley Furniture* nor the Southern District of Florida's subsequent decision in *City Furniture*—compels a different result. Both Courts took AR Design's arguments at face value, crediting a supposed "technological improvement" that vanishes once the claims are read on their own terms. *See Ashley Furniture*, 2021 WL 1213551, at *8; *City Furniture*, 2023 WL 3844917, at *8–*9. Neither decision meaningfully evaluated the substance of the claimed invention, and both departed from controlling—and now subsequent—§ 101 precedent that bars patents on abstract computerization of routine human activity.

Stripped of AR Design's spin, the Texas court's conclusion collapses. The record shows no "specific improvement to the manipulability and appearance of 3-D scenes" at all—just routine manipulation of 3D scenes using off-the-shelf graphics software. *Ashley Furniture*, 2021 WL 1213551, at *7. The claims recite no algorithm, data structure, or rule set—unlike the patents found eligible in *Enfish*, 822 F.3d at 1329 (self-referential database table improving computer functionality) and *McRO*, 837 F.3d at 1307–08, 1316 (rule-based animation improving computer operation). The '572 Patent

instead automates a well-known design process using generic GUI and rendering software, describing what the computer should do rather than how to do it.

Nor do the analogies to *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018), or *Trading Techs. Int'l, Inc. v. CQG, Inc.*, 675 F. App'x 1001 (Fed. Cir. 2017), support a finding of eligibility. *Ashley Furniture*, 2021 WL 1213551, at *7. The interface in *Core Wireless* claimed a specific menu structure for small-screen devices that improved the efficiency of navigating limited-display environments—an architectural solution to a technological constraint. 880 F.3d at 1362–63. The trading-interface patents in *Trading Techs.* likewise recited a defined graphical arrangement coupled with prescribed functionality that resolved concrete latency and accuracy issues in electronic trading. 675 F. App'x at 1003–04, 1006. The '572 Patent contains no comparable structural or functional innovation; its GUI performs only routine visualization tasks using off-the-shelf graphics components. Indeed, improving a user's "experience while using a computer application" (i.e., "usability") does **not** amount to a technological improvement. *Customedia Techs., LLC v. DISH Network Corp.*, 951 F.3d 1359, 1365–66 (Fed. Cir. 2020); *Trinity Info Media, LLC v. Covalent, Inc.*, 562 F. Supp. 3d 770, 783 (C.D. Cal. 2021) (holding that swiping functionality, which merely enhanced user experience rather than improved computer performance, was insufficient to confer eligibility).

The Texas court's observation that performing rendering on the client computer might improve speed (based on AR Design's allegations—not the actual '572 Patent) fares no better. *See Ashley Furniture*, 2021 WL 1213551, at *7. Shifting processing between client and server is not a technological advancement, and the '572 Patent indeed does not disclose any new rendering algorithm, network protocol, or data-transfer method to implement that change. *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d at 614. Even accepting that factual premise, Asserted Claim 1 remains directed to an abstract idea under *Alice* Step 1: the use of standard computer components to perform visualization tasks long practiced by human designers.

Likewise, *City Furniture* doubled down on the same mistake. Rather than scrutinizing the claims or the intrinsic record, it lifted the *Ashley Furniture* court's reasoning **wholesale**—accepting untested allegations as fact and mistaking user-experience rhetoric for technological innovation. *City Furniture*, 2023 WL 3844917, at *8. Similarly, the *City Furniture* court, reasoned that the '572 Patent improved "speed" and "usability," yet those purported benefits appear nowhere in the claims or specification. The decision therefore rests on the same faulty premise: that alleged functional advantages, unsupported by any claimed technological mechanism, can transform an otherwise abstract idea into patent-eligible subject matter. *Id.* at *7–*9. Nevertheless, even if those alleged benefits were supported—and they are not—they reflect only cosmetic convenience, not technological progress. *See Customedia Techs.*, 951 F.3d at 1365–66; *Trinity*, 562 F. Supp. 3d at 783. Under § 101, the line is clear, and the '572 Patent rests on the wrong side of it.

### 3.2    The '572 Patent Does Not Contain An Inventive Concept

Under *Alice* step two, claims are only valid if they contain an inventive concept sufficient to transform the abstract idea into a patent-eligible invention. *Alice*, 573 U.S. at 217.

To be patent eligible, a claim must include "additional features" beyond the abstract idea itself, which "requires more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'" *Id.* at 221. "To save a patent at step two, [the] inventive concept must be evident in the claims." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338–39 (Fed. Cir. 2017) (affirming that disclosure of a purported "technological innovation" in a patent's specification cannot save a patent under *Alice* Step 2, and that the "inventive concept" must be found in the claim itself).

The intrinsic record confirms that the '572 Patent invokes generic computer functionality and well-known components to perform the abstract idea. No "inventive concept" is found in the claims. Further, the '572 Patent's own specification identifies the precise pre-existing software and protocols on which the alleged invention relies:

the claimed graphical interface depends on Microsoft® ActiveX™ controls; the claimed rendering is performed on LightWorks™ and HOOPS™ modules; the geometric modeling engine employs the ACIS Modeler™; and all communication occurs via standard Internet protocols such as HTML, XML, and FTP. *See* Dkt. 1, Ex. A at 7:43–60, 8:46–64, 10:30–11:40. These disclosures confirm that the implementation uses only conventional technology, eliminating any genuine factual dispute over whether the claim recites an inventive concept. *See Berkheimer*, 881 F.3d at 1368. Moreover, the mere application or execution of a graphical process to an object does not constitute an inventive concept. *See Simio*, 983 F.3d at 1363–64.

The claim limitation invoking "luminosity characteristics" also adds nothing inventive. *See* Dkt. 1, Ex. A, Cl. 1. Lighting, shading, and photorealistic rendering were fundamental features of 3D graphics software long before this patent. By its own terms, the '572 Patent uses off-the-shelf rendering engines to apply standard lighting effects; it discloses no new algorithm, architecture, or computational method for doing so. *See id.* at 10:30–11:40. Reciting a desired aesthetic result—"photorealism"—without teaching *how* to achieve it cannot supply an inventive concept. *See Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 911–12 (Fed. Cir. 2017).

Courts addressing analogous claims have consistently concluded that similar additional features do not supply an "inventive concept." *See Move*, 721 F. App'x at 957 (holding that the failure to provide implementation details for the allegedly inventive zoom feature was inadequate and led the court to conclude it was merely an instruction to apply an abstract idea using a computer); *Williamson*, 212 F. Supp. 3d at 900 (finding that "graphical display" limitations describing only "general computer functions" failed *Alice* step two); *FullView,* 485 F. Supp. 3d at 1165–67 (holding that patents for creating composite panoramic images failed *Alice* step two because they relied on "simple geometry" and conventional camera arrangements); *AI Visualize*, 97 F.4th at 1379–81 (finding medical-imaging visualization claims ineligible as "abstract

1  data manipulation" lacking "unconventional technology or a concrete application" of
2  the abstract idea).

3      Neither can solely implementing an abstract idea through routine computer
4  activity supply an inventive concept. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d
5  709, 715–16 (Fed. Cir. 2014) (rejecting claims that "simply instruct the practitioner to
6  implement the abstract idea with routine, conventional activity"); *BASCOM Global
7  Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350–52 (Fed. Cir. 2016)
8  (inventive concept must arise from a "non-conventional and non-generic arrangement
9  of known, conventional pieces").  Here, the '572 Patent's ordered combination—
10  standard GUI, generic client-server setup, and conventional rendering modules—was
11  well known and functions exactly as expected.  The specification reveals no
12  unconventional architecture—nothing that changes how the computer actually works.

13      Abstract data processing or presentation—even when limited to a particular
14  technological context—does not transform routine computer functions into patentable
15  subject matter. *See Gottschalk v. Benson*, 409 U.S. 63 (1972); *Two-Way Media*, 874
16  F.3d at 1338–41; *Customedia Techs.*, 951 F.3d at 1365–66.  The '572 Patent's
17  implementation of familiar 3D visualization steps through conventional graphics
18  engines and Internet protocols falls squarely within that precedent.

19      Moreover, treating these claims as eligible would effectively preempt an entire
20  field of basic 3D visualization.  The '572 Patent's breadth—covering any method of
21  retrieving a 3D object, inserting it into a scene, and rendering it with lighting—would
22  encompass every modern interior-design or augmented-reality application.  Claims that
23  would "pre-empt use of [a] basic approach in all fields" and thereby "grant a monopoly
24  over an abstract idea" cannot satisfy *Alice* step two.  *Bilski v. Kappos*, 561 U.S. 593,
25  612 (2010); *see also DDR Holdings*, 773 F.3d at 1259 (eligibility exists only where the
26  claims "do not attempt to pre-empt every application of the idea").  Granting exclusivity
27  here would hand AR Design a ***monopoly*** over the basic act of digital room
28  visualization—a routine design practice that predates the '572 Patent.

Again, the prior district court decisions as do not withstand scrutiny.[4]  In *Ashley Furniture*, the E.D. Texas court accepted AR Design's argument—without scrutiny—that its claims were directed to a software tool that sets 3D objects within 3D scenes and purportedly improves that tool by enabling luminosity characteristics and real-time manipulation of 3D objects on client devices through an intuitive graphical user interface.  *See id.*, 2021 WL 1213551, at *7.  The court analogized these alleged improvements to enhancements to a physical tool—such as a hammer or saw—that make building dioramas faster and easier, reasoning that similar refinements to software tools could be inventive.  *Id.*

However, that analogy collapses under further review of the intrinsic record.  The '572 Patent does not claim a new tool or unconventional architecture, nor does it claim any novel graphical user interface; it applies known 3D visualization and rendering functions using standard graphics engines and a routine client–server framework.  Distributed rendering and client-side preview capabilities were well established years before the filing date and are expressly described as conventional in the specification itself.  *Cf. Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300 (Fed. Cir. 2016) (finding an inventive concept only where the claimed distributed architecture was itself unconventional).  Here, by contrast, the claimed client–server setup is entirely conventional and provides no inventive concept.  If anything, the '572 Patent is not akin to inventing a new hammer—***it merely attempts to claim the act of swinging an existing one***.  Attempting to claim routine functions applied using generic computer components is precisely what *Alice* forbids.

Furthermore, the '572 Patent's claims do not recite an inventive ordered combination of steps.  *See Alice*, 573 U.S. at 217.  To the extent any order is required by the claimed steps, such order would be inherent to the abstract idea itself, and thus

---

[4] In *City Furniture*, the court did not undertake an *Alice* Step Two analysis.  2023 WL 3844917, at *11.

"cannot supply the inventive concept." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir 2018); *Two-Way Media Ltd.*, 874 F.3d at 1339 (finding no inventive concept where the claims apply "a conventional ordering of steps . . . with conventional technology to achieve its desired result."). Here, the order of operations adds nothing technically innovative, and represent merely the application of the abstract idea itself. *See BSG Tech*, 899 F.3d at 1290 ("[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept.").

Taken individually or as an ordered combination, the elements of the Asserted Claim 1 do nothing more than apply standard computer functions—retrieving, importing, manipulating, and displaying data—to implement an age-old mental process. They lack the "significantly more" required for patent eligibility. *See Alice*, 573 U.S. at 217–18; *Electric Power Grp.*, 830 F.3d at 1355.

## 4.    CONCLUSION

For the foregoing reasons, Defendant Houzz Inc. respectfully requests that the Court enter judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and dismiss this action with prejudice.

Dated: November 21, 2025                PILLSBURY WINTHROP SHAW PITTMAN LLP


                                        By:  */s/ David J. Tsai*
                                             David J. Tsai

                                             Attorneys for Defendant
                                             Houzz Inc.

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant Houzz Inc., certifies that this brief contains 6,543 words, which complies with the word limit of L.R. 11-6.1.

*/s/ David J. Tsai*
David J. Tsai

Attorneys for Defendant
Houzz Inc.

4900-7866-5592